Embree, Receiver of the Home Insurance Co., *v.* Shideler.

MUTUAL INSURANCE COMPANY.—*Receiver.*—*Assessment.*—An action by a receiver of an insolvent mutual insurance company, to collect an assessment on a premium note, cannot be sustained where the complaint shows on its face that neither the receiver nor the court to which he reports his action has examined and determined upon the validity of the claims against the company, for the payment of which the assessment is made. The amount of claims which the receiver or the court will allow as just demands against the company, together with any indebtedness previously allowed by the directors of the company, as shown by their books, must be ascertained, before an assessment can be made to pay such indebtedness.

SAME.—*Assessment.—Complaint.*—The complaint to collect an assessment upon a premium note given to a mutual insurance company must show the time covered by the policy for which the note was given, and that the losses for which the assessment was made occurred during the existence of the policy.

APPEAL from the Dearborn Common Pleas.

DOWNEY, J.—The only error assigned in this case is the action of the court in sustaining the demurrer to the complaint.

The action was brought by the appellant against the appellee on the following instrument:

"$120.00.     For value received in policy No. 5,626, dated the 9th day of December, 1865, issued by the Home Insurance Company, of Lafayette, Indiana, I promise to pay to the said company the sum of one hundred and twenty dollars, in such portions, and at such times, as the directors of said company may, agreeably to their by-laws, require, to pay the losses and expenses, as prescribed by the laws of this State, without any relief from valuation or appraisement laws.          REV. ANTHONY SHIDELER, Pastor."

The complaint alleges the making of this note; that at the April term, 1868, of the Tippecanoe Circuit Court, the plaintiff was appointed receiver of the company; that at the October term, 1868, he presented to the court a statement, showing, among other things not necessary to be here noticed, that assets of the company had come to his hands as follows:

Premium notes............................................$64,401.88
Cash notes due and to become due, about........... 4,138.00
Notes due in annual instalments, about............. 4,000.00
Furniture, about........................................... 125.00
Money received by him.................................... 321.72

   Total ..................................................$72,986.60

Stating the liabilities of the company at...............$22,642.87

The table of liabilities is made up mostly of alleged losses. But he reported as follows: " This amount includes all the claims that have come to my knowledge; the situation of the company's affairs, together with the labor necessary to make this report at all intelligible, and the work of preparing an assessment book, have so absorbed my time, that I have examined no claim with particular reference to its validity, and as a matter of necessity I have seen fit to report all here. I have no doubt that some are invalid, and should not be paid, and will give them all necessary and proper attention hereafter, either under the suggestion of this court or otherwise." Of the whole amount of assets he thought the only notes certainly available were those subject to assessment. Something, he thought, might be made out of the cash notes, but the amount would be small, as was evident from past experience. He asked the court, on account of the claims reported by him, "and as it may be expected that other losses will yet occur to increase the amount of liability, together with the costs and expenses of collecting the assessment, and closing up the affairs," that an assessment of fifty per cent. be ordered upon said premium notes, amounting to the sum of $32,200.94, to be collected without delay. This statement was sworn to by the receiver. The court ordered the receiver to levy the assessment of fifty per cent. In the April term, 1869, he again reported, under oath, showing an addition to the claims, by losses and otherwise, of $8,832.25. In this report he says: " These last claims, as well as those reported heretofore, have not been fully examined with reference to their validity, but will be

as soon as the other and more important work has been done." He also reported that he had made the assessment of fifty per cent. authorized by the preceding order. He had collected $363.22 from assessments and otherwise, which with the $321.72 in his hands at last report, is $684.94. Of this he had paid out $448.91, all apparently for expenses. All of which he claims that he had accomplished by his own labors and the help of a clerk for three months. He asked, and the court granted him an allowance of fifteen hundred dollars for his services thus far. At the October term, 1869, he again reported, under oath, stating that the total amount of losses and claims filed against the company are now............:.........................................$32,074.12
Amount of losses of which I have had notice, but
   which are not yet reported, about.................   1,200.00

       Total.................................................$33,274.12
Total amount of assets, about............$72,664.88
Amount considered almost entirely
   worthless.................................   8,138.00
       Balance...............................................$64,526.88
Amount of notes subject to assessment.............  63,893.20

He further stated, " of the whole amount of assets, as has heretofore been reported, the receiver thinks that none are available but the premium notes, and of them, at least one-third are worthless, if not a greater proportion; besides, the collection of them is found to be very tedious and expensive." In view of all which he asked the court that an assessment might be made of all the unpaid balances of the several premium notes in his possession. This request was granted, and the assessment ordered. It is alleged that notice of the assessment was sent to the defendant at his post office.

There is no allegation in the complaint that the note on which the suit is brought is one of the notes which went into the hands of the receiver, nor that any policy ever issued, except what is said about it in the note. Nor is it

anywhere shown for what time the policy was to run, or that any of the claims spoken of accrued while the defendant held the policy.

The statute law of this State is very meager on the subject of the rights, powers, and duties of receivers. We have not been referred to any provision of the statute, and have not found any, authorizing the receiver of a mutual insurance company to make assessments on the premium notes. There seems, however, to be a necessity for his doing so, and hence the authority may reasonably be implied. Without such a power it would not be possible for a receiver of such a corporation to manage its affairs.

Notes of this description are not payable unconditionally, and at all events. It is provided by statute, that " every person who shall become a member of such company shall, before he receives his policy, deposit his promissory note as a premium note, for such sum as may be agreed upon, on which note he shall pay not less than five per cent. immediately upon its delivery, and the balance of such note shall be payable in part or in whole, when, on any assessment made, the directors shall require the same." 1 G. & H. 395, sec. 45.

The next section provides, that "the funds of every such corporation shall be invested in stocks, or loaned on security, as the directors may order, and shall be appropriated, first, to pay the expenses of the corporation, and then to pay the damages which any member may be entitled to recover in his policy; and if any member shall have a just claim on the corporation, founded on a policy issued by them, exceeding the amount of their then existing funds, exclusive of deposit notes given by the members, the directors shall forthwith assess such sum as may be necessary to pay the same, upon the members, in proportion to the amount of their premiums and deposits severally for seven years; but no member shall be liable to pay in the whole more than the amount of his premium and deposit note."

The next section is as follows: "Before the company shall

make. any assessment on the premium notes for alleged losses, the president and a majority of the directors shall make a statement verified by their oath, exhibiting the amount and nature of the loss sustained; of cash means and premium notes on hand, and the gross amount of the assessment proposed to be levied."

Taking it as granted that the receiver succeeds to the place and powers of the directors under these sections of the statute, what is it necessary for him to do in order to put himself in a position to maintain an action against a member on his premium note?

He must ascertain that a member, that is, one holding a policy of insurance in the company, has "a just claim on the corporation founded on a policy issued by them, exceeding the amount of their then existing funds, exclusive of deposit notes given by the members."

It is evident from the facts shown in the complaint, that there has been an utter and total failure on the part of the receiver to perform this duty. On the contrary, he expressly states in his first report that he has "examined no claim with particular reference to its validity," etc.; and in his next report, "that these last claims, as well as those reported heretofore, have not been examined with reference to their validity, but will be as soon as other and more important work has been done."

What the "more important work" was, when he was about to ask the authority of the court to make an assessment expressly to pay the losses, we cannot imagine. For anything appearing in the complaint and accompanying documents, not one thousand dollars out of the whole amount of claims mentioned may be justly and honestly due from the corporation. But it is claimed that the action of the Tippecanoe Circuit Court is conclusive upon the defendant in this action. We think this may be correct, so far as the action of the court in the appointment of the receiver is concerned, and possibly it might be as to the existence and justness of the claims against the company, and the regularity

of the assessments, if the court had been requested to pass, and had passed upon these questions. But as the authorities on the point are few and not uniform, and it is not necessary that we should do so in this case, we do not decide the question. It is enough to say that neither the receiver nor the court is shown to have examined the claims and found them to be "just claims on the corporation," as required by the statute. The first assessment seems to us to have been quite large. The premium notes amounted to sixty-four thousand four hundred and one dollars and eighty-eight cents.

Fifty per cent of this amount is...................... $32,200.94
The claims, none of which had been examined
    by the receiver "with particular reference to
    their validity"............................................... 22,642.87

Leaving a surplus of................................... $9,558.07

Without collecting this assessment so far as is shown, or showing that it could not be collected, on a representation to the court that "the total amount of losses and claims filed against the company are now thirty-two thousand and seventy-four dollars and twelve cents," and others of which he had received notice but which were not yet reported, about one thousand two hundred dollars, making in all thirty-three thousand two hundred and seventy-four dollars and twelve cents, the court ordered or approved an assessment of the whole amount of the balances due on the premium notes.

We need not decide whether this assessment was excessive and therefore invalid or not; but see on this subject the cases hereinafter cited.

The record of the proceedings in the Tippecanoe Circuit Court being made part of the complaint, and it appearing conclusively therefrom, that the court did not pass upon the correctness of the claims against the company, and the receiver admitting that he had not done so, we think the assessments cannot be sustained.

While on this subject we may as well note some of the

cases which we have come across in our hunt for authorities, which may be useful for future reference in this or other cases.

In New York, the receiver is expressly authorized, under the authority and sanction of the court appointing him, to make all such assessments on the premium notes belonging to the corporation as may be necessary to pay the debts of the corporation, as by the charter thereof the directors of the corporation have authority to make. The directors in making assessments do not act judicially. The assessment must be upon the notes of all those who were members of the company at the time of the loss, whether they had been members for a longer or a shorter time. If the directors omit any persons liable to be assessed, or include the amount of previous assessments, from the payment of which the parties assessed have been released, the assessment is invalid. *Herkimer, etc., Ins. Co.* v. *Fuller,* 14 Barb. 373.

A member of a mutual insurance company is not liable to assessments upon his premium note, to meet deficiencies of means arising from a failure to collect of other solvent members. When a member has paid towards any loss or expenses, in proportion to the amount which his deposit note bears to the other deposit notes, legally assessable, his liability to assessment in respect to such loss or expenses is discharged. He cannot be assessed beyond such proportion, without a violation of the charter of the corporation; and no such assessment, either by the directors or by a receiver duly appointed by the court upon such corporation becoming insolvent, can be upheld. A receiver of an insolvent mutual insurance company cannot legally assess any person insured therein, beyond his proportion of the losses; and he is bound to allow, toward the proportion of members, what they have paid on former assessments, for the same losses, etc., whether void or valid. *In re Bangs,* 15 Barb. 264.

The receiver is substituted in the place of the directors in respect to the liability of the members on their premium notes, and is vested with their rights and powers. He may

collect whatever amount the directors might have collected, and in the same manner. But he cannot, without making an assessment, collect the whole amount of the notes. It was not intended that those who should become members of mutual insurance companies, by giving their deposit notes, should be held liable, either to the company itself, or to a receiver, upon the insolvency of the company, for any greater amount than should be found necessary in order to provide the indemnity contemplated by this system of insurance; and for the purpose of determining the extent of such liability an assessment is necessary. The receiver of an insolvent corporation is to make separate assessments for the payment of the several losses for which the company is liable, upon all the premium notes in force at the time each successive loss has happened. Where several losses have occured at the same time, or so nearly together that the same notes are liable to be assessed for the payment of them all, only one assessment is necessary. *Shaughnessy* v. *Rensselaer Ins. Co.,* 21 Barb. 605.

A receiver has the same power to make assessments and determine the time of payment which the directors had. But the appointment of the receiver does not determine the amount of the indebtedness of a member or the time of payment. Until the receiver has made an assessment and given notice thereof, he cannot maintain an action. *Williams* v. *Babcock,* 25 Barb. 109.

Assessment or apportionment is a condition precedent, necessary to be averred in the complaint, and proved on the trial. An order of the court directing the receiver to prosecute and collect the whole amount unpaid on the deposit and premium notes, by any and all legal and proper ways and means, will not authorize the receiver to sue without having made an assessment. *Devendorf* v. *Beardsley,* 23 Barb. 656.

An assessment is not complete and consummated until it is ascertained, fixed, and determined, by carrying out upon the extension book the amount which each member is to pay. *Bangs* v. *McIntosh,* 23 Barb. 591.

The receiver of a mutual insurance company, in making an assessment upon the premium notes held by the company, is the actor, and his authority depends not upon the order of the court, but upon the existence of the facts rendering an assessment necessary and proper. In ordering a receiver to make an assessment upon the premium notes, the courts do not adjudicate upon the liability of the company, or determine the amounts for which assessments shall be made, or the ratio of assessment. They merely sanction and authorize the acts of the receiver, who acts ministerially, not judicially. The assessment is the act of the receiver, and in and with him is the authority to act in the premises. The promise of the assured is, to pay upon certain conditions, and the existence of those conditions must be shown by the party seeking to enforce the contract. The directors of a company, or the receiver, if one be appointed, have no arbitrary discretion in making an assessment, but they are controlled by the explicit provisions of the statute, and must by proper averments and proof bring themselves within the terms of those provisions before they can enforce the collection of the premium note. Where there was no averment in the complaint, and therefore no foundation laid for the introduction of evidence of the liabilities of the company, and there was no proof of the existence of any liabilities for the payment of which an assessment was necessary, the plaintiff could not recover. *Thomas* v. *Whallon*, 31 Barb. 172.

All that a receiver is required to show, in a suit by him on the premium note, is, that sufficient claims for losses had been presented to the company, or to him, which he allowed, to make up the sum for which he assessed the note. He need not prove all the facts, upon which he or the company allowed the losses. The company, or when insolvent, its receiver, acts for the members, in receiving and allowing claims for losses, and the determinations of the company, or its receiver, in allowing such claims, are *prima facie* binding upon its members. *Sands* v. *Hill*, 42 Barb. 651.

The assessment of a premium note is but the performance

of a ministerial duty, and is therefore not final. *Sands* v. *Sweet*, 44 Barb. 108.

An assessment is a necessary condition to the maintenance of an action by the receiver of a mutual insurance company, upon a premium note, where the charter and by-laws do not otherwise provide. The insolvency of the company does not enable the receiver to recover under circumstances in which the company could not have maintained a suit, nor to any greater amount. *Savage* v. *Medbury*, 19 N. Y. 32.

An assessment in form need not specify the name of the party bound to contribute, nor the amount of the note. A general assessment is good by which the receiver declares that each premium note is assessed to the full amount thereof. When it appears to the receiver, from the liabilities of the company, and the times at which the liabilities· accrued, and from an examination of all the classes and notes of the company, that there is no note that is not chargeable to its entire amount, for liabilities which justly attach during the existence of the policy accompanying such note, a general assessment upon all the notes, without regard to classes, and to their full amount is unobjectionable. *Sands* v. *Sanders*, 28 N. Y. 416.

In an action upon a premium note, it is incumbent upon the plaintiff to give some evidence of the existence of losses which render an assessment proper. Such evidence of loss and settlement and allowance of the same as would conclude the company, while engaged in its proper business, will be sufficient when the action is by a receiver. So a judgment against the company is sufficient evidence. It is unnecessary to show the particular loss for the payment of which the assessment is made. *Jackson* v. *Roberts*, 31 N. Y. 304.

When the assessments on some of the notes cannot be collected, on account of the inability of the makers to pay, the other members are liable to an assessment to pay the amounts which cannot, for this reason, be made. *Bangs* v. *Gray*, 2 Kern. 477; Edwards on Receivers, 296, *et seq.*

The record of losses kept by a mutual insurance company is sufficient *prima facie* evidence that such losses have occurred, in an action to recover an assessment laid upon the members. A previous illegal assessment, not collected, is no defence against the collection of a legal and valid one. Slight disproportion in assessment will not render an assessment invalid. *People's Mut. Ins. Co.* v. *Allen*; 10 Gray, 297.

An assessment of a greater amount than is necessary to enable the company to meet existing just claims against it, together with a reasonable allowance for expenses and failures to make collections, is invalid; and an allowance for these purposes of a sum more than the whole amount of the deficiency in its funds is unreasonable, if no special circumstances are shown to justify the excess. *People's Equitable, etc. Ins. Co.* v. *Babbitt*, 7 Allen, 235.

Cash paid for premiums is subject to the same application as premium notes, and cannot be diverted to the payment of losses occurring before such premiums were received; and an assessment for the whole amount of losses occurring during the time such funds were received, made upon the deposit notes, without first exhausting the cash funds as provided by law, is illegal and void. *The Ohio Mutual Ins. Co.* v. *The Marietta Woolen Factory*, 3 Ohio St. 348.

In an action by a mutual insurance company against one of its members, upon his premium note, the defendant is an adversary party, and as such is not conclusively bound by the action of the board of directors, and is not bound to take notice of their proceedings in relation to his note. A premium note executed by a policy holder to a mutual insurance company promised to pay the sum therein named "in such portions and at such time or times as the directors of said company may, agreeably to their charter and by-laws, require;" by the charter, the premium notes and cash premiums composed the capital stock, and this capital was declared liable for losses and expenses. Held, that the company could not recover on the notes for an assessment

made thereon without alleging and proving that losses and expenses had actually occurred. *The American Ins. Co.* v. *Schmidt*, 19 Iowa, 502.

An assessment is limited by the amount of the losses sustained and unpaid at the time of making the assessment. *The Sinnissippi Ins. Co.* v. *Taft*, 26 Ind. 240.

A refusal to pay an assessment made to cover the expenses of the company, as well as losses sustained, gives no right of action upon the premium note. *The Sinnissippi Ins. Co.* v. *Wheeler*, 26 Ind. 336.

If the assessment be excessive it is void, and an action will not lie to recover it. *The Sinnissippi Ins. Co.* v. *Farris*, 26 Ind. 342.

Where an insurance company is insolvent, or in imminent danger of insolvency, the court has the power to appoint a receiver for such company. If the facts in the complaint are sufficient to give the court jurisdiction of the subject-matter, and power to appoint a receiver, the proceeding, although erroneous, cannot be questioned in a collateral suit. The expenses of the suit, and the expenses of collecting the assessment, etc., are chargeable to the fund raised by the assessment. And if the assessment be for more than necessary, it cannot be objected to, if there be nothing in the judgment of the court authorizing a misapplication of the fund, because the surplus would be refunded to those from whom it was collected. The amount to be assessed is proper matter for the court to determine, and an error of judgment, in that respect, will not vitiate the assessment, or render it liable to be questioned collaterally. *Howard* v. *Whitman*, 29 Ind. 557. By citing this case we do not care to be understood as in all respects approving it. An assessment in excess of the amount necessary to pay losses, with the expenses of collecting the same, would seem, from the authorities, to be invalid. There would seem to be neither reason nor authority for collecting more than is necessary for these purposes.

A complaint on a premium note alleging that the assessment was made to pay losses and expenses is good, if the

assessment filed with the complaint show that it was to pay losses only. *Bersch* v. *The Sinnissippi Ins. Co.*, 28 Ind. 64.

We think the complaint is defective, also, in that it does not show the time covered by the policy, and that the losses for which the alleged assessments were made occurred during that time. The law with reference to mutual insurance companies provides that the policy may be issued for a term not exceeding seven years. 1 G. & H. 395, sec. 42. It may, of course, then, be issued for any period less than seven years. The policy and the premium note constitute but one contract, according to a familiar principle of law, as they are executed at the same time, between the same parties, and relate to the same subject. One who executes a premium note is only liable to contribute to the payment of losses happening during the time for which his policy runs. It is expressly provided by the statute, that "every person insured by any such company shall be a member thereof as long as he shall be so insured." 1 G. & H. 395, sec. 44. The complaint not showing that the losses for which the alleged assessments were made occurred during the time that the defendant was a member, it is clearly defective. *Great Falls Mutual Fire Ins. Co.* v. *Harvey*, 45 N. H. 292.

Another question is made by appellee, and discussed, but we do not deem it necessary to examine it.

The judgment is affirmed, with costs.

PETTIT, J., dissents.

*D. S. Major* and *Liddell*, for appellant.

*N. S. Givan*, for appellee.