ANGUS McDONALD, RECEIVER OF THE MUTUAL BENEFIT ASSOCIATES, PLAINTIFF, v. WILLIAM H. ROSS–LEWIN, DEFENDANT.

*Formation of mutual benefit associations under chap. 267 of 1875 — liabilities of the members thereof, for assessments — termination of membership — liability for unassessed losses — right of a receiver to assess and recover them — the defendant cannot question the title of the receiver to the assets of the company.*

In April, 1877, "The Mutual Benefit Associates" was incorporated under chapter 267 of 1875, providing for the organization of societies or clubs for certain lawful purposes. In March, 1881, the defendant filed an application to be made an associate, agreeing to accept and pay for a certificate "subject to all the conditions of the by laws and regulations of the association." Section 3 of article 8 of the by-laws of the association provided that "upon the death of any member of the association it shall be the duty of the secretary to notify the members of the same, and thereupon each member shall within thirty days after such notification pay to the secretary the amount required by the rules of the association."

*Held,* that the issuance and acceptance of the certificate furnished a sufficient consideration for the defendant's agreement to pay any assessment made during the time he should continue a member of the association, and that, upon his failure to pay, an action would lie against him therefor.

That he should be charged with interest on the amount of the assessments from the time when, by the terms of the by-laws, he was required to pay them.

Section 3 of the act of 1875, provides that "the membership of any person in said society or corporation shall be determined by his death or by his voluntary withdrawal therefrom, or by expulsion therefrom, and the manner of such withdrawal or expulsion of members shall be determined and provided by the by-laws of said corporation." Section 1 of article 10 of the by-laws of the association provided that if any member should neglect to pay any dues or assessments required by the by-laws, "that then and in such case such membership shall cease and determine at once without notice and all claims be forfeited to the association."

*Held,* that the neglect to pay an assessment for thirty days after notice thereof, *ipso facto,* determined the membership of the delinquent.

That he was liable for the amount of all assessments previously made, and also for all losses happening prior to the time when he ceased to be a member, though no assessment therefor had then been made.

That a receiver of the company, appointed in an action brought by the people to procure its dissolution, might assess the members for unassessd losses and bring separate actions against each member to recover the assessments so made against him.

That it was the duty of the receiver to distribute the amounts so received equitably among the several creditors of the company.

That as the plaintiff had been duly appointed a receiver, his title to the assets of the company, including the liability of the defendant to make good the losses by the payment of proper assessments, could not be questioned by the defendant.

CONTROVERSY submitted under sections 1279, 1280 and 1281 of Code of Civil Procedure. In an action brought by the attorney-general in the name of The People against "The Mutual Benefit Associates," the plaintiff was appointed by the Supreme Court the receiver of the property and effects of such corporation, and a judgment "dissolving said corporation, and forfeiting its rights and privileges and franchise," was granted, and the plaintiff duly qualified as such receiver and is now discharging the duties of such receivership.

This action was brought to recover amounts claimed to be due from the defendant for assessments laid and losses occurring while he was a member of the association.

*W. W. McDonald* and *A. McDonald*, for the plaintiff.

*John S. Morgan*, for the defendant.

HARDIN, J.:

May 12, 1875, the legislature passed an act entitled "An act for the incorporation of societies or clubs for certain lawful purposes," chapter 267 of Laws of 1875. In April, 1877, the corporation of which the plaintiff is receiver was organized and commenced its operations and continued the same, having its principal place of business in the city of Rochester, until the suit brought by the attorney-general.

On the 29th of March, 1881, the defendant made and filed his application to the board of trustees of the corporation, in which he asked for a benefit of $2,000 in class A, and for a benefit of $2,000 in class B, and in the application for a "certificate" stated, viz.: "And in case a certificate is granted on the statements and good faith of the above declarations, I hereby agree to accept and pay for the same, subject to all the conditions of the by-laws and regulations of this association."

The application was "by reason of the representations of the soliciting agent of said association that the liability of said appellant to pay would cease at his option, and that when he failed to pay an assessment his liability and membership ceased." Defendant's application was accepted, and a certificate in class A was issued and delivered to him, and the certificate declared a benefit of $2,000 in the following terms, viz.: "This membership entitles Mercy T. Ross-Lewin, his wife, if she survive him, otherwise his heirs or assigns, upon the death of said W. H. Ross-Lewin, to two thousand dollars, provided, however, that the aforesaid member *continues so long to comply* with the requirements of the charter and by-laws of said society, and the stipulations contained in application for membership. * * * In case the stipulations contained in said application for membership are not complied with, then and in every such case the said Mutual Benefit Associates * * * shall not be liable to the payment of the amount promised in this certifi-cate, which certificate shall cease and determine, and the payments made thereon shall be forfeited to the said Mutual Benefit Associates."

The certificate in class B was like the one in class A, *mutatis mutandis*.

June 28, 1881, defendant, pursuant to a notice served, paid an assessment in each class, and September 8, 1881, he also paid an assessment in each class.

On the 28th of September, 1881, the "Associates" duly made an assessment and duly served a notice thereof on the defendant, and on the same day likewise made an assessment in class B, and duly served him with notice thereof, and on the 8th day of November, 1881, another assessment was duly made in each class and notice given to the defendant. Defendant declined and refused to pay and did not pay any of the four last stated assessments, nor did he tender pay or offer to pay the same or tender his resignation as a member of said Associates, nor has he in any way ceased to be a member of said Associates unless by the facts hereinbefore stated.

1. The measure of the defendant's liabilities is to be found in his agreement to conform to the conditions of the by-laws and regulations of the association. By that covenant he consented to be bound according to the spirit and tenor of the by-laws. One of the by-laws provided a mode of realizing money in case of the death of a mem-

ber, to discharge the obligation created by the certificate issued to him. In section 3 of article 8 of the by-laws, the mode is stated and defined. It was as follows: "Section 3. Upon the death of any member of the association it shall be the duty of the secretary to notify the members of the same, and thereupon each member shall, within thirty days after such notification, pay to the secretary the amount required by the rules of the association." This condition of the by-laws was expressly agreed to by the defendant, as we have seen by the quotations we have made from the application made by him for a "certificate." The issuance of and acceptance of the certificate furnish foundation sufficient to support the defendant's agreement to pay any assessments made during the time he should continue a member of the association. The certificate delivered to him recited that he had paid a "membership fee and become a member of said Mutual Benefit Associates." In his application he agreed "to accept and pay for the same, subject to all the conditions of the by-laws and regulations of this association." The mutual obligations in the certificate and in his agreement furnished a consideration sufficient to support his agreement. (*Deraismes* v. *The Merchants' M. Ins. Co.*, 1 Comst., 371.) The third section of article 3 of the by-laws declares the board of trustees shall have power "to fix the rate or amount of fees, dues or assessments." Section 3 of article 8 provides that "upon the *death* of any member of this association it shall be the *duty* of the secretary to *notify* the members of the same, and *thereupon* each member shall, within *thirty* days after such notification, *pay* to the secretary the *amount* required by the *rules* of the association." Article 3 declares that the plan of the society is "to assess *pro rata* on a schedule of rates fixed by the board of trustees for the payment of its death benefits." When an assessment was made and notice thereof given in the mode prescribed, then and from that time it became the duty of a member to pay in conformity to the by-laws and regulations of the association. It follows, therefore, that the defendant was obligated to pay the assessments made under the by-laws and regulations, and of which he was given notice, September 28, 1881, in classes A and B. Those assessments were not paid by the defendant. They were respectively six dollars and ninety-eight cents and eight dollars and forty-six cents.

He ought to have paid October 28, 1881, and therefore he should pay interest on those sums from that time. (*Hyatt, Receiver,* v. *Wait,* 37 Barb., 29.) We come next to the question made as to the right of the defendant to withdraw from the association, and whether his omission for thirty days to pay, after notice, caused a determination of his membership of the association. In section 3 of the act of 1875 a provision is inserted relating to a determination of membership. The section reads, viz. :

" SEC. 3. The membership of any person in said society or corporation shall be determined by his death or by his voluntary withdrawal therefrom, or by expulsion therefrom, *and the* manner of *such withdrawal* or expulsion of members shall be determined and provided by the by-laws of. said corporation, and upon such death, *withdrawal* or expulsion, all and every right, title and interest of the person whose membership *is so determined* in or to or by reason of the said corporation by reason of his *former* membership therein, or in or to its property or effects, shall at once cease and be forever at an end."

The section is the warrant for the by-laws as to withdrawal from or cessation of membership. We have already seen that section 3 of article 8 of the by-laws makes it a duty to within thirty days next after notice to the association to pay any assessment or " amount required by the rules of the association." Following that, in article 10 of by-laws, in section 1, is a " provision relating to ' perfecting membership,' and it in effect declares that if any member ' shall neglect ' to pay any dues or assessments, as required by ' the by-laws,' that then and in such case such membership shall cease and determine at once, without notice, and all claims be forfeited to the association."

That the neglect to pay for thirty days after notice, *ipso facto,* works a cessation of membership, and was so understood by the persons adopting the by-laws, is quite apparent, if we consider the language found in section 2 of article 10. It is there declared, viz. :

" SEC. 2. Provided, however, that board of trustees shall have power to reinstate such delinquent member upon written application, * * * accompanied by payment of all dues and assessments which have accrued to the time of reinstatement."

Considering the section of this statute we have quoted and the

by-laws, together with the language found in the certificate and the application, we are of the opinion that the neglect for thirty days after notice of an assessment causes a determination of membership or a withdrawal, and that the effect of such neglect for thirty days is equivalent to a formal withdrawal or resignation at the expiration of the thirty days next after notice to pay an assessment. From the language of the statute, it is evident that such "withdrawal," or "whose membership is so determined, has the effect of forfeiting all rights in the association or to its property or effects," and that it was intended that his membership should "at once cease and be forever at an end." The by-laws are consistent with and their language fairly carried out the provisions of the statute. It was competent for the parties to stipulate that "such neglect" should cause a cessation of the membership, and they have acted upon that construction of the statute, and it meets with our approval. While forfeitures are not favored in the law and are not declared to result, except upon clear acts intended to work them, we see no reason why the parties to the contract before us might not stipulate that the neglect to pay should produce a determination of membership.

The case of *Neely* v. *Onondaga C. M. Ins. Co.* (7 Hill, 49) cited, has no application to the question before us. There the statute provided for a surrender of a policy and payment of the assessed's portion of the losses, and thereupon he was entitled to his deposit note, and until such surrender he was not entitled to his note, and hence his note remained liable to be assessed.

Here the language both of the statute and the by-laws under it is explicit and unconditional, and evidently intended to work a withdrawal at the end of thirty days' neglect to pay assessments after notice thereof. (See, also, *Hyatt* v. *Waite*, 37 Barb., 29.)

We are also of the opinion that at the expiration of thirty days from the notice of the assessments, to wit, on the 28th day of October, 1881, "the withdrawal" cessation of membership was complete, and that the defendant after that date was not liable to be assessed to make up losses happening after that date. Until his withdrawal was complete — until by the terms of his contract he "ceased" to be a member — he remained liable for losses which happened.

There should be judgment in this case declaring such indebted-

ness as was represented by the assessments, of which notice was given September 28, 1881, and interest thereon, and for losses which happened during the time he was a member, and up to the 28th of October, 1881.

The plaintiff has been appointed a receiver, and his title to the assets, including the liability of the defendant to make good the losses so happening by payment of proper assessments, cannot be questioned by the defendant. (*Story* v. *Furman*, 25 N. Y., 214; *Calkins* v. *Atkinson*, 2 Lansing, 12.) The latter is an authority for saying a separate action must be brought against each obligee or stockholder, and that it is the duty of the receiver, after a recovery, to distribute equitably the fund among the several creditors.

We entertain no doubt of the power of the receiver to make an assessment upon parties liable for unpaid and unassessed losses. As ALLEN, J., said in *Thomas* v. *Whallon* (31 Barb., 178), the assessment is the act of the receiver, and in and with him is the authority to act in the premises, and his *authority* depends upon the existence of the *state of facts* rendering the assessment necessary."

Assessments made by receivers against delinquent members or stockholders of corporations of which they have been appointed receivers have been upheld in many cases. (*Thomas* v. *Whallon*, *supra*; *Story* v. *Furman*, *supra*; *Sands* v. *Shoemaker*, 2 Keyes, 268; *Sands* v. *Sanders*, 26 N. Y., 244.)

Judgment must be ordered for the plaintiff in accordance with the views expressed in this opinion.

As the submission stipulated that no costs shall be awarded to the plaintiff against the defendant, the judgment will provide that no costs be recovered.

SMITH, P. J., and MACOMBER, J., concurred.

Judgment for the plaintiff in accordance with the opinion, to be settled by Mr. Justice HARDIN upon notice of five days.